# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HENRIK KLINGE RETAINED TRUST,** | : | Civil No. 1:09-CV-1812 |
| | : | |
| **Plaintiff** | : | |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| | : | |
| **TRIUMPH APPAREL CORP.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM ORDER

### I.  Statement of Facts and of the Case

This is a breach of contract action brought by the Plaintiff arising out of a long-standing commercial lease arrangement at a property in York County, Pennsylvania. The Plaintiff, the Henrik Klinge Retained Trust (hereafter "Klinge"), alleges a straightforward breach of this lease agreement in its complaint, asserting that the parties entered into a lease in September of 1990, and that Triumph breached the lease by vacating the premises without notice in August 2009, after accruing several months' delinquencies of rent payments.(Doc. 1.)

For its part, the defendant Triumph Apparel Corporation (hereafter "Triumph") has filed an amended answer to this complaint, which disputes these allegations of breach of contract and asserts a counterclaim of unjust enrichment against Klinge. (Doc. 11.) This unjust enrichment counterclaim is premised upon an assertion by

Triumph that it paid a "security deposit" of $93,132.00 on this lease at the time that it entered into the lease agreement on September 12, 1990. (Doc. 111, ¶26.) Asserting that Klinge has retained this security deposit for the past twenty years, Triumph alleges this unjust enrichment on Klinge's part as a counterclaim in this contract action.

As the parties prepare for the trial of this case, Klinge has now filed a motion *in limine* which seeks to preclude Triumph from presenting evidence in support of this security deposit counterclaim. (Doc. 18.) That motion has been fully briefed by the parties, (Docs. 19, 26, and 27), and this briefing reveals a certain enigmatic quality to this security deposit counterclaim, one in which both parties appear to struggle to attach current meaning to a decades-old transaction.

According to the parties' briefs, on or about September 12, 1990, a corporate predecessor of Triumph sold the real estate at issue here to Henrik Klinge, who placed the real estate in the Henrik Klinge Retained Trust. It appears that the parties then simultaneously entered into a lease agreement which allowed Triumph's corporate antecedent to lease the property back from Klinge.

The written lease agreement is silent with respect to any security deposits paid by Triumph to Klinge. However, the settlement sheet on these transactions reflects a single, enigmatic entry showing the following deposit: "3 month rent deposit." No

further explanation for this "deposit" is found on the settlement sheet, and our review of the contemporaneous lease agreement sheds no further light on the meaning of this "deposit."

Moreover, it appears that the parties little noted, nor long remembered, this aspect of their 1990 transaction until it was alleged in 2009 that the lease had been breached. Faced with an alleged breach in 2009, Triumph now characterizes the "deposit" as a "security deposit", which its records reveal has not been repaid. Klinge, in turn, characterizes the payment as a three month rent advance, and urges the court to exclude any testimony regarding this security deposit from the trial of this case.

Given the fact that the actual transaction occurred more than twenty years ago, it is hardly surprising that both parties advance their competing views of the meaning of this single entry on the settlement sheet in somewhat speculative fashions. For its part, Triumph notes the entry, characterizes the deposit as a security deposit and asserts that it was never repaid this deposit. However, Triumph does not appear to present any direct testimony from a witness with personal knowledge of the September 1990 transaction who can state that the deposit was, in fact, a security deposit. In contrast, Klinge insists that the deposit was merely an advance payment of rent, but presents no witness with personal knowledge of the September 1990 transaction who can support its description of this payment. On the basis of these

3

competing, and speculative, views regarding the meaning of these decades-old events, Klinge seeks an *in limine* ruling precluding any of this proof at trial.

For the reasons set forth below, we will adopt a middle course. We will deny Klinge's motion *in limine*, without prejudice, but place Triumph on notice that it must at trial present an offer of proof regarding what competent evidence it intends to present in support of its characterization of this payment, before it can proceed with this proof.

**II.  Discussion**

Klinge's motion *in limine,* and Triumph's response to that motion, both call upon the Court to delve into the past and ascribe meaning to a single phrase in a 21-year old real settlement sheet. This task, in turn, entails evidentiary questions regarding both the relevance and competence of this evidence, questions which we are often cautioned to avoid addressing in a vacuum.

At the outset, this motion presents an issue of relevance. Rule 401 of the Federal Rules of Evidence defines relevant evidence and provides that:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid., Rule 401.

Under Rule 402 of the Federal Rules of Evidence, "[a]ll relevant evidence is

admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible" Fed. R. Evid. Rule 402.

This broad rule favoring the admissibility of relevant evidence is then tempered by Rule 403 of the Federal Rules of Evidence which provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

All of these rules governing what is relevant evidence, however, assume the competence of the witnesses to testify to certain facts. Rule 601 of the Federal Rules of Evidence broadly defines the competence of witnesses, stating that: "Every person is competent to be a witness except as otherwise provided in these rules." Fed. R. Evid., Rule 601. However, this broad definition of competence is also tempered by a basic truth embodied in Rule 602; namely, that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness

has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed. R. Evid., Rule 602.

Parties often invite courts to make pre-trial rulings on issues of competence, relevance and admissibility through motions *in limine*. The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . ."). Moreover, the Third Circuit has characterized Rule 403, the rule permitting exclusion of evidence, as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859. However, "[a] trial court is afforded substantial discretion when striking a . . . balance with respect to proffered evidence, and a trial judge's decision to admit or exclude evidence . . . may not be reversed unless it is arbitrary and irrational." McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009).

This case aptly illustrates why caution is appropriate in this field. The parties' competing submissions in this matter cast this dispute as largely a matter of relevance. However, we see the threshold issue in this case as one of the competence of witnesses to testify to any relevant facts.

In this case, the relevance and admissibility of this evidence will turn on whether the $93,132 payment was a security deposit, as Triumph claims, or an advance payment of rent, as asserted by Klinge. We cannot decide this question in the abstract based solely on the enigmatic passage in the settlement sheet, and can only resolve this question based upon competent evidence that meets the standards of Rule 602; that is, "evidence . . . sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. Rule 602. The present record before the Court does not permit any finding on this threshold issue of the competence of any witness to testify to these facts. Therefore, we will deny this motion *in limine*, but we place Triumph on notice that, as the party seeking to introduce this proof at trial, it will be incumbent upon the defendant to make an offer of proof prior to presenting this evidence, an offer of proof that demonstrates both the competence of its witnesses to testify to this characterization of this aspect of this 1990 transaction and the relevance of the proffered evidence.

In this regard, we further note that an assertion by a witness without personal knowledge of the transaction that the $93,132 deposit was never repaid would not, standing alone, constitute competent proof that the payment was, in fact, a security deposit. Such proof in isolation is not probative since it presents a fact that is equally consistent with Klinge's claim that the payment was an advance of rent. In both instances, the payment, once made, typically would not be returned. Therefore, Triumph cannot carry its burden of presenting competent proof concerning the essential nature of the deposit by simply citing the fact that the moneys were not repaid. Rather, more is, and will be, required here before this proof will be admitted at trial.[1]

---

[1] In this regard, we leave it to the parties and the proof to determine what would constitute competent evidence on this issue, but note that, in addition to direct evidence, the nature of this payment might be proven circumstantially. For example, evidence regarding whether lease payments were made by Triumph's corporate antecedent to Klinge in the three months immediately following this lease agreement might be probative here. The existence of such payments in September through December 1990 might suggest that the deposit was not a rent advance, but rather a security deposit. In contrast, if no monthly rent payments were made until 1991, this evidence could suggest circumstantially that the $93,132 was a three month advance of rent. We offer these observations not in an attempt to dictate for the parties the type of evidence that must be proffered at trial, but simply to highlight for them an example of the sort of circumstantial proof that may be probative on the outstanding issue regarding the nature of the "rent deposit" and its relation to the underlying lease.

### III. Conclusion

Accordingly, for the foregoing reasons, the Plaintiff's motion in *limine* (Doc. 18) will be DENIED, without prejudice to renewal of argument on this issue at trial, but the Defendant IS ORDERED to make a preliminary offer of proof at trial addressing the concerns identified by the Court prior to endeavoring to present evidence or argument concerning a security deposit at trial.

So ordered this 2d day of December, 2010.

> */s/ Martin C. Carlson*
> Martin C. Carlson
> United States Magistrate Judge