# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HENRIK KLINGE RETAINED TRUST,** | : | **Civil No. 1:09-CV-1812** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **TRIUMPH APPAREL CORP.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM ORDER

## I.      INTRODUCTION

This is a breach of contract action brought by the Plaintiff arising out of a long-standing commercial lease arrangement at a property in York County, Pennsylvania. The Plaintiff, the Henrik Klinge Retained Trust (hereafter "Klinge"), alleges a straightforward breach of this lease agreement in its complaint, asserting that the parties entered into a lease in September of 1990, and that Triumph breached the lease by vacating the premises without notice in August, 2009, after accruing several months' delinquencies of rent payments.  (Doc. 1.)

For its part, the Defendant Triumph Apparel Corporation (hereafter "Triumph") filed an amended answer to this complaint, in which Triumph disputes these

allegations of breach of contract and asserts a counterclaim of unjust enrichment against Klinge. (Doc. 11.) This unjust enrichment counterclaim is premised upon an assertion by Triumph that it paid a "security deposit" of $93,132.00 on this lease at the time that it entered into the lease agreement on September 12, 1990. (Doc. 11, ¶26.) Asserting that Klinge has retained this security deposit for the past twenty years, Triumph alleges this unjust enrichment on Klinge's part as a counterclaim in this contract action.

As the parties prepared for the trial of this case, Klinge filed a motion *in limine* in which the Plaintiff sought to preclude Triumph from presenting evidence in support of this security deposit counterclaim. (Doc. 18.) According to the parties' briefs, on or about September 12, 1990, a corporate predecessor of Triumph sold the real estate at issue here to Henrik Klinge, who placed the real estate in the Henrik Klinge Retained Trust. It appears that the parties then simultaneously entered into a lease agreement which allowed Triumph's corporate antecedent to lease the property back from Klinge.

The written lease agreement is silent with respect to any security deposits paid by Triumph to Klinge. However, the settlement sheet on these transactions reflects a single, enigmatic entry showing the following deposit: "3 month rent deposit." No further explanation for this "deposit" is found on the settlement sheet, and our review

of the contemporaneous lease agreement sheds no further light on the meaning of this "deposit."

Moreover, it appears that the parties little noted, nor long remembered, this aspect of their 1990 transaction until it was alleged in 2009 that the lease had been breached. Faced with an alleged breach in 2009, Triumph insists that the "deposit" was a "security deposit", which its records reveal has not been repaid. Klinge, in turn, characterizes the payment as a three month rent advance, and urges the Court to exclude any testimony regarding this deposit from the trial of this case.

Given the fact that the actual transaction occurred more than twenty years ago, we found it to be unremarkable that both parties advanced their competing views of the meaning of this single entry on the settlement sheet in somewhat speculative fashions. For its part, Triumph characterized the deposit as a security deposit and asserts that it was never repaid this deposit. However, in its brief opposing Klinge's motion, Triumph presented no direct testimony from a witness with personal knowledge of the September 1990 transaction who could state that the deposit was, in fact, a security deposit that was paid pursuant to the terms of the lease. In contrast, Klinge insisted that the deposit was merely an advance payment of rent, but presented no witnesses who had personal knowledge of the September 1990 transaction who could support its description of this payment. On the basis of these competing, and

speculative, views regarding the meaning of these decades-old events, Klinge requested the Court to enter an order precluding any of this proof at trial.[1]

Upon consideration of the parties' competing briefs, and competing characterizations of Triumph's payment to Klinge as either a security deposit, or as a rental advance, we entered an order that denied without prejudice Klinge's motion in limine. (Doc. 28.) However, we advised Triumph that to the extent the party sought to present evidence in support of its stated position that the payment constituted a security deposit paid pursuant to the terms of the lease, it was incumbent upon Triumph to present competent evidence, in accordance with Rule 602 of the Federal Rules of Evidence, which defines such evidence as that "sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. We, therefore, instructed Triumph to make an offer of proof, prior to presenting evidence at trial, that demonstrated both the competence of its witnesses to testify to the company's characterization of the payment to Klinge as a security deposit.

In this regard, we further advised the parties that an assertion by a witness without personal knowledge of the transaction that the $93,132 deposit was never

---

[1] As will be noted in footnote 2, *infra*, Klinge has now come forward with an affidavit from Henrik Klinge in which Mr. Klinge attests that the $93,132 "deposit" was, in fact, an amount that was credited to the seller-lessee in the sale-leaseback transaction, which served to reduce the amount of money that Mr. Klinge, as the purchaser-lessor, needed to tender at the closing of the transaction.

repaid would not, standing alone, constitute competent proof that the payment was, in fact, a security deposit. Such proof in isolation is not probative since it presents a fact that is equally consistent with Klinge's claim that the payment was an advance of rent. In both instances, the payment once made, typically would not be returned. Therefore, Triumph cannot carry its burden of presenting competent proof concerning the essential nature of the deposit by simply citing the fact that the moneys were not repaid. Rather, more is, and will be, required here before this proof will be admitted at trial.

(Doc. 28, at 8.)

## II.   <u>DISCUSSION</u>

In response to our ruling and admonition, Klinge has renewed its motion in limine, arguing, *inter alia*, that because the original lease agreement of 1990 was silent on the issue of deposits – security or otherwise – the Court should not permit Triumph to introduce parol evidence to prove the existence of a term that was never included in the contract. (Doc. 40, at 2.) Klinge maintains that the lease agreement itself is unambiguous, and without any ambiguity in the contract document itself, it would be improper for the Court to permit Triumph to introduce parol evidence in order to supply a new term or to create the appearance of an ambiguity. (<u>Id.</u>, at 3.)

Klinge notes that Triumph has offered four exhibits that appear to constitute records of the company that characterize the payment to Klinge as a deposit, and accounted for as an asset that Triumph kept on its records, at least at some times. (Id. at 2-3.) Klinge dismisses these bookkeeping entries as "nothing more than useless, irrelevant, and self-serving declarations." (Id. at 3.) In this regard, Klinge notes that Triumph has not supported its exhibits with an affidavit or declaration, nor has the company identified who the author of the accounting entries may have been, or established that the exhibits are, in fact, business records. (Id.) In sum, Klinge renews its objection to Triumph's use of the bookkeeping entries as evidentiary support for the company's counterclaim, which is grounded in its contention that earlier payments to Klinge constituted uncredited security deposits.

In its opposition brief (Doc. 41), Triumph argues that Klinge's arguments regarding parol evidence are misplaced, because Triumph is not seeking to supply a term to the lease, or to explain an ambiguity to an otherwise unambiguous document. Instead, Triumph insists that the evidence that it seeks to offer goes to the company's *performance* under the lease, and is not offered to help explain or interpret the lease. In this regard, Triumph contends that the parol evidence rule should have no application, where Triumph is seeking to base its counterclaim on an unjust enrichment theory, and to counter Klinge's argument that Triumph failed to pay rent

through the end of the lease term.  In addition, in its trial brief, Triumph has indicated

its intention to present testimony from the company's current Chief Financial Officer,

who is prepared to testify that the company has carried the $93,132 payment as an

asset on its books, and to offer testimony estimating the current value of this asserted

deposit.

Having had the benefit of the parties' supplemental arguments regarding the

admissibility of Triumph's proffered evidence in support of its counterclaim, and

upon careful consideration, we conclude that the evidence that Plaintiff relies upon,

without more, is not admissible to support Triumph's contention that the 1990

payment to Klinge constituted a refundable security deposit.

As we have previously noted, Rule 401 of the Federal Rules of Evidence

defines relevant evidence as:

> evidence having any tendency to make the existence of any
> fact that is of consequence to the determination of the
> action more probable or less probable than it would be
> without the evidence.

Fed. R. Evid. 401.  Rule 402 provides, further, that all "relevant" evidence shall be

admissible at trial, except as otherwise provided by other Rules of Evidence or other

law.  Fed. R. Evid. 402.

These broadly fashioned rules regarding relevant evidence and its presumptive admissibility are tempered by Rule 403, which provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Furthermore, aside from limitations on the admissibility of relevant evidence set forth in Rule 403, the rules governing what constitutes relevant evidence for purposes of trial assumes the competence of witnesses to testify to certain facts. Thus, Rule 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed. R. Evid. 602.

In our judgment, these rules, when read together, compel the conclusion that the evidence that Defendant has proffered in support of its counterclaim is inadequate under the rules and cannot be admitted at trial. Despite having had the benefit of discovery in this case, Triumph has been unable to identify a witness who might be competent to offer testimony to support the company's contention that money the company paid to Klinge in 1990 was actually tendered as a security deposit, or that Klinge continues to hold this money. Instead, it appears that Triumph intends to

support its bookkeeping evidence with testimony from the company's current Chief Financial Officer, Robert Gioia who is prepared to testify, that "Triumph is carrying a deposit in an amount exceeding $93,000.00 as an asset on the company's financial books and records [and to] authenticate any financial documentation submitted by Triumph to establish that a deposit was provided to Plaintiff as part of the 1991 lease back transaction." (Doc. 42, Trial Brief, at 2.)

However, in our memorandum order (Doc. 28), we specifically noted that in order to introduce proof in support of its contention that the $93,132 payment in 1990 constituted a security deposit that Triumph was entitled to offset against any amount of unpaid rent the company may be found to owe, Triumph would need to make "an offer of proof that demonstrates both the competence of its witnesses to testify to this characterization of this aspect of the 1990 transaction and the relevance of the proffered evidence." (Doc. 28, at 7.) As we understand Triumph's limited proffer, Mr. Gioia is simply not competent to give testimony in support of Triumph's characterization of the $93,132 paid to Klinge in 1991, because he lacks personal knowledge regarding the nature of the transaction and Triumph's payment when it was made; instead, he appears competent to testify only to the fact that Triumph itself continues to carry this payment as an asset on its books, and that a transaction involving $93,132 was in fact part of the 1990 transaction. Upon careful

consideration, we conclude that Klinge's motion to preclude this testimony is well taken, and that Triumph has failed to come forward with competent evidence in support of its claim that a payment was actually made to Klinge that constituted a security deposit, which should be offset against any rent or other charges found to be due and owing under the lease.[2]

Beyond these concerns regarding the competence of any Triumph witness to testify to these matters, there is a second concern which precludes this proof. The Defendant's counterclaim in this matter is expressly premised on their assertion that they are owed a "security deposit" which they paid at the time that Triumph entered into this lease. Yet, a review of the lease itself, which is a comprehensive 11-page document, reveals absolutely no reference to a security deposit. Thus, the lease does not mention the payment of a security deposit by Triumph, and does not authorize Klinge to execute upon a security deposit in the event of a breach of the agreement. The complete silence of the comprehensive lease agreement to discuss in any way a

---

[2] Notably, we observe that Plaintiff has offered an affidavit from Henrik Klinge, who purchased the subject property from Esmark Apparel, Inc., a predecessor of Triumph, in 1990 as part of a sale and leaseback transaction. (Doc. 40-1, Aff. of Henrik Klinge, ¶ 4.) In his affidavit, Mr. Klinge attests that the $93,132 at issue represents a credit that he extended to Esmark for three months' rent in order to reduce the amount of money that Mr. Klinge would need to tender at closing. (Id. ¶ 5.) Triumph has not offered competent evidence to contradict this proffered evidence, or to support its argument, made in its counterclaim, that the $93,132 constituted a security deposit.

security deposit has legal significance now, since the Defendant is effectively inviting us to allow the introduction of parol evidence, interjecting an oral security deposit provision into this otherwise unambiguous written lease agreement.

This we cannot do. In this diversity case we are obliged to apply Pennsylvania law, which has a clearly established rule relating to parol modification of contracts. Under Pennsylvania law, "the parol evidence rule generally has been described as follows:

> Where the parties to an agreement adopt a writing as the final and complete expression of their agreement, . . ., evidence of negotiations leading to the formation of the agreement is inadmissible to show an intent at variance with the language of the written agreement. Alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically dealt with in the written contract are merged in or superseded by that contract. . . . . Thus the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract. McGuire v. Schneider, Inc., 368 Pa.Super. 344, 348-49, 534 A.2d 115, 117-18 (1987) (citations omitted).

1726 Cherry Street Partnership by 1726 Cherry Street Corp. v. Bell Atlantic Properties, Inc., 653 A.2d 663, 665 (Pa.Super. Ct. 1995).

In this case we find that the written lease is clear, unambiguous, and does not contain any security deposit provision. Given the unambiguous nature of the written lease, Triumph's efforts to present evidence twenty years after the execution of the

written lease of an oral security deposit provision to this lease agreement run afoul of the parol evidence rule and cannot be permitted.[3]

In its most recent submission, Triumph suggests that it may still be entitled to present this evidence on an unjust enrichment theory, even if the payment is not a security deposit which under the written lease agreement was not subject to parol modification. (Doc. 41.) The difficulty with this assertion is twofold. First, we are unclear on what the legal theory for this reimbursement is; and, second, Triumph has not yet identified a witness who can testify to first-hand knowledge of facts surrounding such an alleged payment. Thus, if Triumph wishes to pursue such a claim, it must first make an offer of proof outside the presence of the jury, of facts and evidence beyond those tendered thus far, which would support this claim.

Finally, we note that Triumph in its response to this motion *in limine* has now lodged for the first time its own evidentiary objection to several of Klinge's exhibits, namely, invoices and documents which appear to reflect tradesmen estimates of the costs of certain repairs to the leased facilities. The grounds of Triumph's belated objection is that the exhibits have been belatedly disclosed.

---

[3]Moreover, to the extent that Triumph also anticipated attempting to elicit evidence that it was entitled to accrue interest on the funds which it claims were deposited under this alleged oral security deposit agreement, we note that Pennsylvania law appears to only allow for the accrual of interest on security deposits for residential leases. 68 Pa. C.S. §§250-511-512

Oftentimes in litigation evidentiary matters come to the attention of counsel as trial approaches. Thus it has been in this case, where both parties have made some on-going disclosures to one another as the trial approaches. Rulings on the admissibility of this evidence rest in the trial court's discretion, but in the exercise of that discretion we favor the introduction of relevant and competent evidence, provided that there is not unfair surprise or undue prejudice to the opposing party. In this instance, we do not perceive any undue prejudice, or unfair surprise arising out of the use of these exhibits to document estimated repair costs. Therefore, we will not exclude this proof.[4]

---

[4]We recognize from Triumph's pre-trial memorandum that it may attempt to present some rebuttal evidence relating to these costs if this evidence is admitted. To the extent that Triumph anticipates attempting to present such proof, in order to ensure that surprise and prejudice are avoided, it should promptly disclose its proffered proof to Klinge.

## III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED THAT Plaintiff's motion *in limine* seeking to preclude the introduction of evidence in support of Triumph's counterclaim that the company paid to Plaintiff or a predecessor $93,132 as a security deposit under the lease is GRANTED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Date: January 12, 2011