**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HENRIK KLINGE RETAINED TRUST,** | : | **Civil No. 1:09-CV-1812** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Magistrate Judge Carlson)** |
| v. | : | |
| | : | |
| **TRIUMPH APPAREL CORP.,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM ORDER</u>**

## I.   <u>INTRODUCTION</u>

This is a breach of contract action brought by the Plaintiff arising out of a long-standing commercial lease arrangement at a property in York County, Pennsylvania. The Plaintiff, the Henrik Klinge Retained Trust ("Plaintiff" or "Klinge"), alleged a straightforward breach of this lease agreement in its complaint, asserting that the parties entered into a lease in September of 1990, and that Triumph Apparel Corporation ("Defendant" or "Triumph Apparel") breached the lease by vacating the premises without notice in August 2009, after accruing several months' delinquencies of rent payments.  (Doc. 1)  On January 18, 2011, prior to trial, the Court entered a consent judgment against Defendant in the amount of $800,000.   (Doc. 50) Thereafter, Plaintiff engaged in discovery in aid of execution.

Frustrated by the results of this post-judgment discovery process, Plaintiff has now filed a motion seeking sanctions under Rule 37 of the Federal Rules of Civil Procedure (Doc. 79), arguing that Defendant has "made a mockery of the [discovery] process by its studied refusal to provide the information sought by Plaintiff." (Doc. 82, at 2)  Plaintiff seeks an award of costs and attorney's fees.

Defendant disputes Plaintiff's characterization of its post-judgment conduct, represents that its discovery responses have been appropriate, and therefore maintains that sanctions are entirely unwarranted.  Plaintiff declined to file a reply brief in further support of its motion, which is now ripe for disposition.  For the reasons that follow, we find that Plaintiff has failed to demonstrate that sanctions are warranted, and the motion will be denied.

## II.    <u>**SUMMARY OF THE MOTION FOR SANCTIONS**</u>

Frustrated by what it has been able to discover to date about the potential existence of assets that might help satisfy the judgment in this case, Plaintiff's motion claims that Defendant has unreasonably failed to participate meaningfully in post-judgment discovery in aid of execution.  (Doc. 79)  In its brief in support of the motion, Plaintiff asserts that "Defendant has steadfastly refused to provide copies of all bank account statements, has failed to provide their corporate minute book with minutes and motions, and, most significantly, has refused to provide any accounting

for the millions of dollars in funds generated by its relationship with Iconix Brand Group." (Doc. 82, at 1-2)  In addition, Plaintiff expresses frustration that Plaintiff designated a former Chief Operating Officer as the company's designee for purposes of a Rule 30(b)(6) deposition, arguing that the designee was unable to answer certain questions put to him regarding company assets.  Lastly, Plaintiff complains about the timing of the production of certain documents that had been requested in connection with the corporate deposition.  For all of these alleged failures, Plaintiff argues that the Court should impose sanctions against Defendant under Rule 37 of the Federal Rules of Civil Procedure.

In response, Defendant asserts that Plaintiff has essentially been seeking sanctions against Defendant for alleged non-compliance with discovery requests almost from the moment the consent judgment was entered in this case, and in many ways seems to have conducted discovery to support a motion for sanctions rather than to discover information in aid of executing on the judgment.  Moreover, Defendant essentially suggests that Plaintiff has long known that the company was penniless, and without assets that could be executed upon.  In this regard, Defendant emphasizes that Plaintiff has, for years, been aware that Defendant ceased all business operations in 2009, and that Defendant's assets were liquidated during the first half of 2010 after the financing arrangement with Wells Fargo Bank was terminated, resulting in the

final demise of the company, and culminating in the sale of certain real estate that Defendant owned at the time.  Accordingly, Defendant maintains that "Plaintiff knew when it obtained the judgment that Defendant was dead as a company and had been for over 6 months."  (Doc. 81, at 10-11)

In response to Plaintiff's assertion that it has refused to participate in discovery, Defendant notes that since April 2011, the company has produced more than 3,000 documents containing substantive information in response to discovery requests, and that the company has made available an additional two truckloads of corporate records that were generated by prior management that may contain relevant information, but Plaintiff has declined to review these documents.

In addition, Triumph Apparel defends its decision to designate one of its former officers, Kevin Nisbet, as the company's corporate designee in response to Plaintiff's Rule 30(b)(6) deposition notice.  Defendant notes that Mr. Nisbet traveled from his home in South Carolina to Pennsylvania on October 24, 2011, to be subjected to the deposition, and that Mr. Nisbet was prepared to testify about the documents that had already been produced to Plaintiff, and which reflected Defendant's financial condition at the time the records were created.  These documents included banking records and ledgers that show the flow of funds into and out of Defendant during 2009 and the first half of 2010, among other corporate

4

records.   Defendant emphasizes that certain documents Plaintiff would like to discover simply do not exist or are now beyond the ability of the company to provide, particularly in its non-operating, liquidated state.

Finally, Defendant asserts that Mr. Nisbet was prepared to testify substantively in response to Plaintiff's deposition notice, but Plaintiff's counsel elected not to use the documents that had been produced in order to determine whether Mr. Nisbet could respond, preferring to accept "I don't know" as an answer to numerous questions, and then take the drastic route of requesting sanctions on the grounds that Defendant had designated an unprepared or ignorant witness for the deposition. Defendant argues that although Mr. Nisbet testified that he was prepared to provide additional substantive testimony at the deposition, Plaintiff's counsel decided not to solicit any further testimony, and instead simply adjourned the deposition, leading to the instant motion.   On these asserted facts, Defendant contends that sanctions are simply not warranted.

## III.   DISCUSSION

### A.    Legal Standards

Pursuant to Rule 69 of the Federal Rules of Civil Procedure, a judgment creditor is permitted to engage in discovery in aid of execution.   This rule provides, in pertinent part:

> In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

Fed. R. Civ. P. 69(a). "The scope of post-judgment discovery is broad, enabling judgment creditors to seek discovery of both current assets and past financial transactions that could lead to the existence of fraudulently concealed or fraudulently conveyed assets." Auction Credit Enters., LLC v. Lo Castro, No. 2:10-mc-49, 2010 U.S. Dist. LEXIS 80401, at *2 (W.D. Pa. Aug. 10, 2010) (citing Wright & Miller, Federal Practice and Procedure: Civil § 3014 (West 1973)).

One of the discovery tools available to litigants, including post-judgment creditors, is the deposition of a corporation or other organization, authorized by Rule 30(b)(6) of the Federal Rules of Civil Procedure. This rule provides as follows:

> **(6) *Notice or Subpoena Directed to an Organization.*** In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known

> or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

As the rule suggests, "Rule 30(b)(6) places the burden upon the deponent to 'make a conscientious good faith endeavor to designate the persons having knowledge of the matters sought...and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed...as to the relevant subject matters'." Costa v. County of Burlington, 254 F.R.D. 187, 189 (D.N.J. 2008)(quoting Harris v. New Jersey, 259 F.R.D. 89, 92 (D.N.J. 2007)). "The duty of preparation goes beyond matters personally known to the designee or to matters in which the designee was personally involved, and if necessary the deponent must use documents, past employees, or other sources to obtain responsive information." Harris, 259 F.R.D. at 92-93.

"While the rule may not require absolute perfection in preparation — it speaks after all of matters known or reasonably available to the organization — it nevertheless certainly requires a good faith effort on the part of the designate to find out the relevant facts — to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories". Wilson v. Lakner, 228 F.R.D. 524, 528-29 (D. Md. 2005).

7

Pursuant to Fed. R. Civ. P. 37(d)(1)(A), "the court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent — or a person designated under Rule 30(b)(6) or 31(a)(4) — fails, after being served with proper notice, to appear for that person's deposition...". Although the rule speaks only of a failure "to appear," <u>id.</u>, in some cases, inadequate preparation of a Rule 30(b)(6) designee may be sanctioned based on a lack of good faith, prejudice to the opposing party, and disruption to judicial proceedings. <u>United States v. Taylor</u>, 166 F.R.D. 356, 363 (M.D. N.C. 1996). The Third Circuit Court of Appeals has explained:

> In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf. . . . Thus, we hold that when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), "producing an unprepared witness is tantamount to a failure to appear" that is sanctionable under Rule 37(d).

Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000) (citing Taylor, 166 F.R.D. at 363).[1] Similarly, where a Rule 30(b)(6) designee persists in giving false, misleading, or evasive answers to deposition questions, sanctions may be warranted under Rule 37. See Andrews v. Holloway, 256 F.R.D. 136, 141 (D.N.J. 2009) (sanctions appropriate where a Rule 30(b)(6) designee provides false, misleading and evasive answers).

Rule 37 provides for a wide range of sanctions that may be imposed for a party's failure to comply with discovery obligations, "including discretion to deem facts as established, bar evidence, strike or dismiss pleadings, enter a default judgment, and find a party in contempt." Wachtel v. Health Net, Inc., 239 F.R.D. 81, 84 (D.N.J. 2006); see also Fed. R. Civ. P. 37(b)(2)(A)(vi). "The choice of the appropriate sanction is committed to the sound discretion of the district court." Hewlett v. Davis, 844 F.2d 109, 113 (3d Cir. 1988). However, if a district finds that sanctions are warranted, the Court must make factual findings to justify such an award. See Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180, 186-87

---

[1] It must be emphasized, however, that in Black Horse Lane the court found the Rule 30(b)(6) deponent in that case was so "uncooperative" and "unhelpful" that his testimony amounted to a failure to appear, as he claimed to have no knowledge about, or have no recollection of, the conduct of his own company or the agreements that he himself negotiated and signed. Id. at 304-05. Such conduct is simply not indicated by the deposition record in the case at bar.

(3d Cir. 2003) (finding district court abused its discretion in imposing sanctions against defense counsel where the court made no explicit findings of misconduct, and the record did not support such a finding).

Rule 37(b) provides further that in cases where a court finds it appropriate to sanction a party for discovery violations, the court must order the offending party or that party's attorney to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of such expenses unjust.  Fed. R. Civ. P. (b)(2)(C).

Rule 37(a) also requires that a party moving to compel discovery sanctions must first submit to the court "a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." Fed. R. Civ. P. 37(a)(2)(A).  Similarly, Local Rule 26.3 requires that the moving party certify that it made a good faith effort to resolve the discovery dispute before seeking court action.  LR 26.3.

**B.     Plaintiff Has Failed to Demonstrate that Discovery Sanctions are Warranted.**

In this case, Plaintiff suggests, in somewhat conclusory fashion and with essentially no evidentiary support, that Defendant should be sanctioned for failing to

comply with post-judgment discovery that has been conducted in this case. We disagree.

As an initial matter, we observe that although Plaintiff has certified that he engaged in a good-faith effort to resolve the discovery dispute before bringing this motion, Plaintiff has not responded at all to Defendant's counsel's representation that "[n]o such good faith effort was advanced. Plaintiff merely stated, in advance of Nisbet's deposition, that it intended to seek [] sanctions. There was no communication following the deposition asking to resolve any issues." (Doc. 81, at 9) Defendant's counsel has thus asserted that Plaintiff threatened to seek sanctions before the deposition had even occurred – suggesting that the motion is not only improperly filed, but that Plaintiff's premature intention to seek sanctions was itself improper. Indeed, Plaintiff has submitted an email written nearly one week prior to the Rule 30(b)(6) deposition in which its counsel represents that "[u]nder any scenario, I will petition the court for a finding of contempt immediately following the deposition next week." (Doc. 79-1, October 19, 2011 email from Joseph C. Korsak, Esq., to Adam Share, Esq.) The lack of any explanation as to what kind of good-faith effort Plaintiff's counsel made to resolve this discovery dispute, coupled with his pre-deposition representation that he would seek sanctions regardless of what transpired

11

at the deposition, suggest that the requirement of a good-faith conferral was not satisfied in this case.

Aside from this procedural irregularity, we simply do not find that Plaintiff has persuasively demonstrated that sanctions are warranted or appropriate, either as a result of Defendant's post-judgment production of documents, or due to Mr. Nisbet's conduct as Defendant's Rule 30(b)(6) designee.

As an initial matter, through much of this litigation, it has long been apparent to the Court and to the parties that Defendant had ceased operations, was liquidated prior to consent judgment being entered, and that Triumph Apparel remained little more than a corporate shell devoid of assets that could be executed upon in satisfaction of judgment.  Notwithstanding these apparent circumstances – circumstances that the parties have discussed in the past with the Court – the Court authorized Plaintiff to undertake post-judgment discovery in an effort to determine whether Defendant had any assets that might be pursued to satisfy all or part of the judgment in this case.

As part of that process, Plaintiff served on Defendant written discovery, and took the company's Rule 30(b)(6) deposition, at which time Kevin Nesbit, the company's former Chief Operating Officer, was designated to testify on behalf of the corporation.  It appears that as part of the post-judgment discovery in this case,

Defendant produced to Plaintiff approximately 3,000 pages of documents in response to the deposition notice, and Defendant represents that it further made available to Plaintiff's lawyer two truckloads full of documents that counsel was invited to examine if he believed it would be useful – something he has declined to do.

As far as we can tell, Plaintiff is arguing that it is entitled to Rule 37(b) sanctions because it is dissatisfied with the timing of Defendant's production of written discovery, and with the quantity and scope of documents produced. Additionally, Plaintiff claims that Mr. Nesbit was either an inadequate corporate designee, or otherwise conducted himself in a manner during his deposition that warrants the imposition of sanctions.  We disagree.

Although we can appreciate that Plaintiff and its counsel are frustrated by what appears to be a case in which there simply are no assets available to satisfy the judgment, we do not find that Plaintiff has demonstrated that Defendant engaged in sanctionable conduct as part of post-judgment discovery.  Although it may be that Defendant's written production was not made in strict accordance with the timing demands set forth in the deposition notice, the fact remains that Defendant did produce approximately 3,000 documents, and although Plaintiff may not like the fact that Defendant was unable to produce documents in response to all requests, it appears that in many cases, the documents simply do not exist or are currently

13

unavailable to Defendant.  Mr. Nesbit's testimony on behalf of the company regarding the existence or unavailability of documents is essentially consistent with the company's production.

Thus, Defendant has represented to the Court that it made no tax filings after 2008; consistently therewith, Mr. Nesbit testified that the company has no tax records to produce for years 2009, 2010, and 2011.  Regardless of whether Plaintiff demanded that such documents be produced, to the extent no such documents were ever created, Defendant can hardly be expected to produced them as part of the post-judgment discovery in this case.

Likewise, Defendant has represented that the majority of its historic accounting records generated after April 2009 are inaccessible to the company due to a payment dispute with the company that warehoused or maintained these records.  Whatever the circumstances leading to this dispute between Defendant and a third party, there is nothing to suggest that the facts are anything other than those that Mr. Nesbit represented, and the Court therefore finds no basis to sanction Defendant for failing to obtain these documents for Plaintiff's inspection.

In part because Plaintiff has done little to offer support for its motion, we find it unnecessary to examine each category of documents that Plaintiff sought in connection with the Rule 30(b)(6) deposition, but we do note that through discovery

Plaintiff sought information regarding bank accounts that Triumph Apparel currently maintains; assets and liabilities; and the company's business relationships up to the present time. Plaintiff questioned Mr. Nesbit about these areas of inquiry during the Rule 30(b)(6) deposition and Mr. Nesbit appears to have answered the questions to the best of his knowledge. There are instances throughout the relatively short deposition where Mr. Nesbit represented that he did not know the answer to a particular question, but we do not find his conduct during the deposition to have been evasive, misleading, obstructionist, or false. Instead, Mr. Nesbit essentially testified that he was with the company through its wind-down, and that the company was bereft of assets after July 2010, while burdened by more than $10 million in liabilities. To the best of his knowledge, Mr. Nesbit attested that Triumph Apparel had no ongoing operations or sales, no bank accounts, and no current assets. Although Plaintiff seems to suggest that Mr. Nesbit's answers were wholly inadequate because he did not specifically inquire of the company about these matters prior to testifying, his answers – in context – are reasonable in light of his representation that Triumph Apparel was simply not a going concern after July 2010.

Plaintiff seems to believe that Defendant should face sanctions for designating a witness who does not currently work for the company, or someone who might be able to answer questions that Plaintiff asked about bank accounts, assets, and

transactions that the company may have entered into up until the end of 2011. There is no dispute that Mr. Nesbit left the company in July 2010, at which time the company was selling off its assets and winding down operations. Thus, Mr. Nesbit – who was the company's Chief Operating Officer at the time leading up to the sale and essential liquidation of the corporation – was sufficiently knowledgeable to discuss Defendant's business and affairs leading up to the eventual wind-down.

Indeed, Mr. Nesbit testified that at the time of this asset sale, Triumph Apparel held no assets and was burdened by more than $10 million in liabilities. (Doc. 81, Ex. A, Nesbit Dep., at 37) In response to questioning, Mr. Nesbit candidly informed Plaintiff's counsel that he was unaware of the company's "current net worth" and "banking relationships" between April 2011 and the date of the deposition. However, Mr. Nesbit's answers, and their reasonableness, must be read in context. Throughout his deposition, the point is made repeatedly that the company wound up operations in mid-2010 following a default under its factoring agreement with Wells Fargo, disposed of its assets, and was no longer a going concern after July 2010. Plaintiff has offered nothing to cause the Court to question the veracity or reasonableness of Mr. Nesbit's answers regarding these matters.

Moreover, it appears that Mr. Nesbit did, in fact, make some inquiry of the company prior to the deposition. In response to questioning about Triumph Apparel's

16

current bank accounts, Mr. Nesbit told counsel that only a week prior to his deposition he had consulted with Ken Lazar, Triumph Apparel's principal, who told him that the company had no current assets <u>of any kind</u>. Although Plaintiff may be frustrated by this information, we do not find that there is anything sanctionable about the way in which Defendant responded to these questions through Mr. Nesbit.

Two final observations are in order. First, we note that when Plaintiff's counsel concluded his direct examination during the Rule 30(b)(6) deposition, Defendant's counsel endeavored to clarify the record by eliciting further answers from Mr. Nesbit. During these questions, which invited Mr. Nesbit to explain the basis for his answers to Plaintiff's counsel's questioning, Mr. Nesbit testified that to his knowledge, the company had no current accounts receivable, and that the company had not maintained corporate minutes because it was not legally required to do so. (<u>Id.</u>, at 45.) Additionally, Mr. Nesbit explained that the company had not filed tax returns after 2008 – and, therefore, there were no returns to produce – because the company had insufficient funds even to pay its accountant, who resigned due to lack of payment. (<u>Id.</u>) Mr. Nesbit also explained the circumstances that resulted in the company losing access to certain inventory, shipping, and accounting records following the transfer of this information from a server based in York, Pennsylvania to one maintained by a Canadian company. (<u>Id.</u>, at 46.) Additionally,

17

Mr. Nesbit testified that certain inventory certificates would be available from Wells Fargo, and they would also be held in the trailer that had been made available to Plaintiff.  (Id., at 47.)

When Plaintiff's counsel resumed some very brief questioning on re-direct, Mr. Nesbit explained that although he did not specifically inquire, to the best of his knowledge the company has no current receivables because the company has had no sales since July or August of 2010, and, therefore, there was nothing to be sold that might generate a receivable.  Review of this questioning on re-direct, and indeed review of substantially all of the deposition, suggests that Plaintiff had shifted from seeking information about Defendant's actual financial condition to asking questions intended to suggest that Mr. Nesbit had insufficiently prepared for the deposition, and, therefore, to support Plaintiff's impending motion for sanctions – something Plaintiff's counsel promised to seek nearly a week before the deposition commenced. (Doc. 79-1, October 19, 2011 email from Joseph C. Korsak, Esq., to Adam Share, Esq.)  Regardless of the nature of Plaintiff's inquiry, following our complete review of the Rule 30(b)(6) deposition transcript, we do not find any basis to impose sanctions.

Finally, we note that to the extent Plaintiff wanted to determine whether Triumph Apparel has any current assets or bank accounts, or to confirm Defendant's

18

answers to these questions through Mr. Nesbit, it seems that this may have been accomplished through the use of interrogatories or a similar discovery tool.  In the parties' joint submission to the Court on August 31, 2011, Defendant made this very point, noting that Plaintiff had not served any interrogatories on the company in an effort to solicit further information or clarification.  It appears that such discovery may have been an efficient and useful means of obtaining information about whether the company has any assets or bank accounts at the current time and, if so, the value of such assets, and the location and holdings of such accounts.

In summary, we find that Plaintiff has failed to demonstrate that Defendant should be sanctioned for its post-judgment discovery conduct in this case and the motion for sanctions will be denied.

## IV.  **<u>ORDER</u>**

For the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiff's motion for sanctions (Doc. 79) is DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: January 27, 2012